**UNITED STATES of America, Appellant,**

v.

**William CURTIS, III.**

No. 81–2712.

United States Court of Appeals, Third Circuit.

Argued April 16, 1982.

Decided July 13, 1982.

Certiorari Denied Oct. 18, 1982.

See 103 S.Ct. 379.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., John J. Rosenberg (argued), Sp. Asst. U. S. Atty., Philadelphia, Pa., for appellant.

Donald M. Moser, Burton A. Rose (argued), Peruto, Ryan & Vitullo, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, ADAMS, Circuit Judge, and LACEY,* District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

William Curtis, III, was tried and convicted of several criminal offenses. Because of prosecutorial misconduct prejudicial to Curtis, this Court reversed his conviction and remanded the matter for a new trial. On remand, the district court held that further prosecution of Curtis was barred by the double jeopardy clause of the fifth amendment and consequently dismissed the indictments. We now reverse the district court's ruling and remand the case once again for retrial.

### I

In late 1979 and early 1980, the Government indicted Curtis on three counts of distributing methamphetamine, in violation of 21 U.S.C. § 841, and one count of possession of a firearm during the commission of a felony, in violation of 18 U.S.C. § 924. At trial Curtis stipulated that the alleged drug transactions had taken place but testified that his involvement in the drug sales had been the result of government inducement and coercion. The prosecutor, in an apparent effort to discredit Curtis' proffered entrapment defense, sought to ask

* Hon. Frederick B. Lacey, United States District Court for the District of New Jersey, sitting by

Curtis why he had waited until trial to make any allegation of entrapment or coercion. With regard to Curtis' conduct when initially taken into police custody, the prosecutor asked:

And then in this hour and a half or two hours [that you were in police custody], you never said to those police officers, "You got the wrong guy; I was forced into it"?

Transcript of April 23, 1980, at 3:120. Curtis' attorney objected to the question, asserting that it violated Curtis' right against self-incrimination. The court overruled the objection, and Curtis explained that he made no comments regarding his alleged entrapment to the arresting officers because he did not have a lawyer and "didn't want to say anything that would be harmful for [him]. . . ." Prior to the closing arguments, the court cautioned the prosecutor against reminding the jury of Curtis' failure to express his entrapment argument to the arresting officers. The court instructed:

I don't want the prosecutor to argue to the jury, "Why didn't he tell them?" . . .
I don't want you to capitalize on the fact that he said nothing and I will tell the jury that a person arrested has no obligation to say anything and so forth. So avoid that in your argument. I don't think there is any legal basis for you to argue it on the facts of the case for the reason I gave.

Id. at 3:160–161. During the Government's closing argument, the prosecutor stated to the jury:

Well, ladies and gentlemen of the jury, you remember the direct examination of William Curtis and you remember the cross-examination of William Curtis and there was just one question that was asked of Mr. Curtis.
And by that I ask the Court's leave to argue this, your Honor.
And that is, why didn't you tell the story to anyone before?

designation.

*Id.* at 3:47. Curtis' attorney objected to this remark, and the court immediately *issued a* curative instruction to the jury. The following day Curtis' attorney, after "a chance to reflect on the events of yesterday," moved for a mistrial. The prosecutor responded that, despite the court's previous instruction, his remark had become justified as an "invited response" to certain statements that the defense counsel had made in summation. The court, 494 F.Supp. 279 denied Curtis' mistrial request, observing that the prosecutor's utterance was ambiguous and that any undue prejudice to Curtis was cured by the court's instruction. Transcript of April 24, 1980, at 4:53–56. The jury subsequently found Curtis guilty.

Curtis appealed his conviction to this Court. Although it rejected a separate ground for reversal—assertedly improper cross-examination of a character witness—as harmless error, the Court held that the prosecutor's statements about Curtis' silence, made in direct contravention of the district judge's warning, violated Curtis' right against self-incrimination under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). The Court further concluded that the errors, "cumulative in effect," could not be deemed harmless, and ordered that "[t]he judgment appealed from will be reversed and the case remanded for a new trial." *United States v. Curtis*, 644 F.2d 263, 269–71 (3d Cir. 1981).

The case was then rescheduled for retrial in the district court. At a pretrial hearing

Curtis moved for a dismissal of the indictment on double jeopardy grounds. The district court granted the motion, explaining that the prosecutor's conduct required such an outcome. Following rejection of its motion for reconsideration by the district court, the government appealed to this Court.[1]

## II

■ As a preliminary matter, we must decide whether the disposition of Curtis' double jeopardy claim is controlled by the "law of the case." *See generally Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982). In its initial consideration of Curtis' conviction, we ordered the case "remanded for a new trial." 644 F.2d at 271. That order could be viewed as an implicit determination that, notwithstanding the double jeopardy clause or any other constitutional or statutory provision, a new trial was permissible and appropriate in Curtis' case. Such an inference from the Court's order would be strengthened by a reference to retrial contained in a footnote to the opinion:

Institutional considerations also weigh heavily in favor of a new trial. We have had too many occasions to comment on the all too prevalent practice of unfair argument by government attorneys. When it is presented in the face of an express advance warning to avoid it, the dignity and integrity of the judicial process demands an effective remedy. None short of the grant of a new trial has to

---

1. Curtis challenges the timeliness of the government's appeal, which was filed within 30 days of the denial of reconsideration by the district court but not within 30 days of the dismissal of the indictments. This challenge is without merit. The filing of a timely motion for reconsideration renders a judgment non-final, and the government is permitted to appeal within 30 days after the district court's denial of reconsideration, when the judgment again becomes final. *See United States v. Healy*, 376 U.S. 75, 77–80, 84 S.Ct. 553, 554–556, 11 L.Ed.2d 527 (1964); *United States v. Bulgier*, 618 F.2d 472 (7th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 51 (1980). Curtis argues that in this case the motion for reconsideration was frivolous and intended solely

as a stalling tactic, and that it therefore should be deemed by this Court to be a nullity. It is possible that in some extreme cases a motion for reconsideration might be filed in such bad faith as to be denied any legal effect. *See Healy*, 376 U.S. at 80 n.4, 84 S.Ct. at 556 n.4. Such an exception however, could be applied only in the most egregious circumstances, or the party moving for rehearing or reconsideration could never be certain of the proper time for an appeal. The motion for reconsideration in this case, which was itself filed within 30 days of the dismissal of the indictments, addressed a serious legal question and was not frivolous. The appeal following its denial was, therefore, timely.

date provided effective deterrence against such misconduct. Thus even if we could agree that the conduct was not significantly prejudicial, which we cannot, a reversal would still be in order. *Id.* at 271 n.6.

Although this language expressly refers to a new trial, there is no advertence in the opinion to the double jeopardy concerns inherent in a second trial, and therefore no evidence that the Court specifically took those concerns into account when it ordered a new trial. It may be that the order reflected full awareness of these questions, given that a retrial by its very nature suggests consideration of the possibility of double jeopardy. *See United States v. Heymann,* 586 F.2d 1039, 1040 (5th Cir. 1978) (incorporating district court opinion). Nevertheless, neither Curtis nor the Government argued the double jeopardy question before the first panel. We decline to infer rejection of an allegation of a constitutional violation in the absence of some judicial statement that the contention has been considered and rejected. Accordingly, we do not conclude that Curtis' double jeopardy claim was definitively resolved by the order of this Court on his initial appeal.

■ Nevertheless, the decision of the panel on the first appeal does resolve some issues with respect to the propriety of a second trial. The district court indicated in its statements on remand that, aside from any constitutional double jeopardy concern with respect to the rights of the defendant, it might have institutional concerns of its own that would justify dismissal of the indictments. *See* Transcript of June 23, 1981 at 19. With respect to those concerns —namely, the need for integrity of the trial process and the sanctioning of prosecutors—this Court in its prior decision carefully weighed those factors in the passage quoted above, and appeared explicitly to have concluded that a new trial was the appropriate means to protect "the dignity and integrity of the judicial process." 644 F.2d at 271 n.6. To the extent that the district court would bar a retrial on such grounds, and not on Curtis' constitutional

right against double jeopardy, the law of the case doctrine dictates that this Court's determination as to the propriety of retrial must be considered binding.

### III

Having ascertained that Curtis' double jeopardy claim is not foreclosed by the law of the case, we proceed to consider the merits of that claim. The Government maintains that recent Supreme Court cases make it clear that imposition of a double jeopardy bar is appropriate only in situations where a conviction is reversed for insufficiency of evidence or where prosecutorial misconduct is intended to cause a mistrial and in fact does so; the Government contends that Curtis' case falls into neither of these categories. Curtis, on the other hand, asserts that a double jeopardy defense to retrial is also permissible when such prosecutorial misconduct leads to an appellate reversal, even though it does not result in an immediate mistrial. We view this question as both complicated and close; but, for the reasons that follow, we conclude that its ultimate resolution is not necessary on this appeal.

■ Ordinarily a criminal defendant who successfully challenges his conviction in an appeal may be subjected to retrial. As the Supreme Court had declared, "to require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect." *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978). Rather, as the Court stated in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the possibility of a retrial following a successful appeal reflects an appropriate balancing of the state and individual interests at stake: "when [trial error] occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." *Id.* at 15, 98 S.Ct. at 2149.

It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.

*Id.* (quoting *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964)). *See also United States v. DiFrancesco,* 449 U.S. 117, 126–31, 101 S.Ct. 426, 431–434, 66 L.Ed.2d 328 (1980).

■ The Supreme Court has established only one exception to the rule that retrial is permissible following appellate reversal of a conviction. When a criminal conviction is reversed for legal insufficiency of evidence to convict, the prosecution has been deemed to have had its "one fair opportunity to offer whatever proof it could assemble"; the double jeopardy clause does not permit the government to have a second chance. *Burks,* 437 U.S. at 16, 98 S.Ct. at 2149. In such a case, where by definition "the government's case was so lacking that it should not have even been *submitted* to the jury," the Court has observed that, given the finality accorded to a jury verdict of acquittal, "it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." *Id. See also Bullington v. Missouri,* 451 U.S. 430, 442–46, 101 S.Ct. 1852, 1859–62, 68 L.Ed.2d 270 (1981).

This exception to the general rule has been construed quite narrowly. In a case contemporaneous with *Burks,* the Supreme Court emphasized that "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict . . . poses no bar to further prosecution on the same charge." *Scott,* 437 U.S. at 90–91, 98 S.Ct. at 2193. The stringency of this policy was highlighted in the Supreme Court's recent decision that retrial is permissible following a state appellate court's reversal of a verdict that is deemed "against the weight of the evidence" but not necessarily lacking sufficient evidence under federal standards. *Tibbs v. Florida,* —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). In *Tibbs* the Court explained that *Burks* and its companion case, *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), were based on the "special weight" which the double jeopardy clause attaches to judgments of acquittal. The Court concluded that appellate reversals for verdicts "against the weight of the evidence," unlike reversals for legal insufficiency of the evidence, are not functionally the equivalent of acquittals and therefore do not stand as a bar to retrial. *Id.* at —— U.S. at —— – ——, 102 S.Ct. at 2218–19. The holding and analysis of *Tibbs,* addressing a situation similar in several ways to that faced in *Burks,* suggest caution in applying the double jeopardy clause to bar retrials after appellate reversals on any grounds outside the narrow confines of legal insufficiency of evidence as set out in *Burks.*

Although the Supreme Court has not squarely confronted the question whether a reversal for prosecutorial misconduct might ever bar retrial, in *Burks* it did note in dictum that "prosecutorial misconduct" fell within the class of grounds for reversal that did not implicate the Double Jeopardy Clause. 437 U.S. at 15, 98 S.Ct. at 2149.[2]

---

**2.** The Court's reference in *Burks* to "prosecutorial misconduct" is instructive. We are hesitant, however, to place great weight on this language in order to determine the treatment appropriately accorded to *intentional* prosecutorial misconduct, and especially to the exceptional prosecutorial misconduct—committed in an effort to provoke a mistrial—alleged in this case. Because *Burks* itself did not involve any sort of prosecutorial misconduct, the Court's language may not have been intended to preclude application of the double jeopardy clause

to situations not within the Court's contemplation at that time. *United States v. Opager,* 616 F.2d 231, 236 n.13 (5th Cir. 1980). Arguably more persuasive, however, is the Court's reiteration in *Oregon v. Kennedy,* —— U.S. ——, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), a case addressing prosecutorial misconduct leading to a mistrial, that "This Court has consistently held that the Double Jeopardy Clause imposes no limitation upon the power of the government to retry a defendant who has suc-

Curtis nevertheless contends that, at least in some circumstances, the double jeopardy clause may preclude retrial after a reversal for prosecutorial misconduct, notwithstanding the language in *Burks*. In support of this proposition, the appellant urges that we look to the law governing *mistrials* that are triggered by prosecutorial misconduct. In such cases the double jeopardy clause may be implicated, depending on the motivation of the prosecutor in committing the misconduct:

> The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where "bad faith conduct by judge or prosecutor" . . . threatens the "[h]arassment of an accused by successive prosecutions or declarations of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant.

*United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976) (*quoting United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion), *and Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963)). *See also Crawford v. Fenton*, 646 F.2d 810, 816 (3d Cir. 1981); *Government of Virgin Islands v. Scuito*, 623 F.2d 869, 871–74 (3d Cir. 1980); *United States v. Kessler*, 530 F.2d 1246 (5th Cir. 1976). The Supreme Court recently has adopted what may be a more restrictive standard for determining when a mistrial for prosecutorial misconduct precludes a retrial. In *Oregon v. Kennedy*, —— U.S. ——, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (plurality opinion), the Court reviewed a determination by the Oregon Court of Appeals that double jeopardy barred retrial following a mistrial brought about by prosecutorial misconduct that is "intentional, and intended to prejudice the defendant, but is not specifically intended to provoke a mistrial." The Court held that the double jeopardy clause, made applicable to the states in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), was not offended by retrial in such a case, and emphasized that "the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendants into moving for a mistrial." —— U.S. at ——, 102 S.Ct. at 2091. *Accord, United States v. Leppo*, 641 F.2d 149, 150 (3d Cir. 1981), *cert. denied*, 454 U.S. 964, 102 S.Ct. 503, 70 L.Ed.2d 379 (1981).

Curtis argues that the concerns underlying application of the double jeopardy clause to mistrials should apply with equal weight to appellate reversals that result from prosecutorial misconduct committed with the intent to provoke a mistrial request. There is considerable force to this proposition. Given sufficiently prejudicial prosecutorial misconduct, a mistrial will result if the trial judge correctly recognizes the nature of the violation; appellate reversal is necessary only if the trial judge errs. It would appear inconsistent to afford a defendant less constitutional protection simply because a trial judge erred in denying a mistrial request. If an appellate reversal does not preclude retrial in a situation where the granting of a mistrial for the same misconduct would have done so, the rights of the defendant appear to turn on which of two courts—the trial or appellate court—first recognizes the impropriety of the prosecutor's actions. As the Court of Appeals for the Fifth Circuit recently stated, "The policies underlying the double jeopardy clause may be undermined by a tainted proceeding allowed to be completed only because of a trial judge's erroneous denial of motions for mistrial or motions to dismiss." *United States v. Opager*, 616 F.2d 231 (5th Cir. 1980). *See also United States v. Roberts*, 640 F.2d 225, 230–31 (9th Cir. 1981) (Norris, J., dissenting, addressing issue not reached by majority opinion), *cert. denied*, 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981); *United States v. Rios*,

---

ceeded in persuading a court to set his conviction aside, unless the conviction has been reversed bec[au]se of the insufficiency of the evidence." *Id.* at ——, 102 S.Ct. at 2090 n.6.

637 F.2d 728, 729 (10th Cir. 1980); *Commonwealth v. Potter*, 478 Pa. 251, 259, 386 A.2d 918, 922 (1978); Westen & Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Sup.Ct.Rev. 81, 103. The consequences of divergent outcomes for mistrials and appellate reversals may go beyond apparent logical incongruity to include serious practical implications. A trial judge, ruling on a mistrial motion, might be swayed by the awareness that granting a mistrial would result in an outright dismissal of charges while denying that motion would, even if an appellate court ultimately reversed for the same prosecutorial conduct complained of in the mistrial motion, ensure that retrial would be available. Indeed, the plurality opinion in *Oregon v. Kennedy* justified its narrow application of the double jeopardy clause to mistrials as, *inter alia*, necessary to minimize the extent of this anomaly. —— U.S. at —— & n.7, 102 S.Ct. at 2090 & n.7.

Recognizing the same problem as the *Kennedy* plurality, the concurring opinion of Justice Stevens would have reconciled the inconsistency by extending application of the double jeopardy clause to appellate reversals rather than by narrowing its application to mistrials. Justice Stevens, who was joined by three other Justices, also observed that the plurality's reasoning was "premised on the assumption that an appellate court that concluded not only that the defendant's mistrial motion should have been granted but also that the prosecutor intended to provoke a mistrial would not be obligated to bar reprosecution as well as reverse the conviction." Justice Stevens termed such an assumption "irrational." at —— n.22, 102 S.Ct. at 2095 n.22.

It might be that inconsistent treatment of mistrials and reversals is explained by certain differences between those two stages of a proceeding. Intentionally provoked mistrials may serve as a ruse to subject the defendant to a series of groundless prosecutions, whereas misconduct leading to a reversal does not deprive the defendant of a verdict. *See Gully v. Kunzman*, 592 F.2d 283, 289–90 (6th Cir. 1979) (retrial is disapproved after certain mistrials but not after appellate reversals because "the misconduct resulting in a mistrial has deprived the defendant of '[t]he valued right to have his trial completed by a particular tribunal' ") (*quoting Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)), *cert. denied*, 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292 (1979). Perhaps more to the point, especially in view of the analysis in *Florida v. Tibbs, supra*, a mistrial prevents a jury from rendering what might have been an acquittal whereas a reversal occurs after a conviction by a jury.[3]

Nevertheless, such distinctions demonstrate, at the very least, that a retrial in this setting involves problems that are not addressed by the Supreme Court's general

---

**3.** *Tibbs* emphasized the "special weight" that the double jeopardy clause attaches to an acquittal or its equivalent. —— U.S. at —— ——, 102 S.Ct. at 2218–19. One might view a successful prosecutorial attempt to provoke a mistrial—but not an unsuccessful yet otherwise identical attempt—as the virtual equivalent of an acquittal on the merits by a jury. Where the jury is denied an opportunity to reach a verdict, a prosecutorial attempt to prevent that jury from reaching a verdict can fairly be viewed as an indication that the prosecution recognizes the imminence of acquittal. Where the trial judge recognizes the impropriety of the prosecutor's conduct and grants a mistrial, that judicial decision may be seen as standing in place of the acquittal that otherwise would have resulted. In contrast, where the trial judge denies a mistrial motion, either properly or erroneously, one could argue that the defendant has not received any judgment analogous to an acquittal—at least in the way that the *Burks* Court deemed an appellate reversal for insufficiency of the evidence to be analogous to an acquittal. Although such reasoning may appear strained, it does serve to reconcile *Tibbs v. Florida* with *Oregon v. Kennedy*. Given the language in *Tibbs* that the Double Jeopardy Clause prohibits retrial after initial trial error only in cases where the defendant has, in effect, been acquitted, *Oregon v. Kennedy* may be viewed as fitting within the *Tibbs* schema if it is read to equate mistrials intentionally provoked by the prosecution with acquittals. The status of the defendant who has been convicted despite a prosecutorial effort to provoke a mistrial falls outside this accommodation of the two cases; it is difficult to equate a conviction, arising out of prosecutorial misconduct but nevertheless supported by sufficient admissible evidence, with an acquittal.

statements restricting application of the double jeopardy clause after appellate reversals. In view of these special concerns, it may be argued that, despite the apparently preclusive language of *Burks* and subsequent cases, the double jeopardy ·clause should not be read to forbid a retrial following an appellate reversal for prosecutorial misconduct if a retrial would be barred following the granting of a mistrial for the same misconduct. We need not resolve that argument here, however. Even if, as Curtis maintains, appellate reversal for some sort of prosecutorial misconduct does foreclose retrial, the cases discussed above would compel the conclusion that such an exception would be an extremely narrow one, arising only under very limited circumstances. In this case, we conclude, after reviewing the record and the findings of the district court, that the prosecutorial misconduct was insufficient to bring the case within any such narrow exception.

## IV

■ Under the foregoing analysis, a second trial of Curtis following the initial reversal of his conviction could constitute double jeopardy, if at all, only if the prosecutorial misconduct would, by the standards of *Oregon v. Kennedy*, have foreclosed a second trial after a mistrial. Under *Kennedy*, it is clear that a retrial is not barred even after a mistrial for prosecutorial misconduct unless "the conduct giving rise to the successful motion for a mistrial was *intended* to provoke the defendant into moving for a mistrial." —— U.S. at ——, 102 S.Ct. at 2091 (emphasis added). Such an intent would be necessary here for the double jeopardy clause to have any application. In the proceedings below, the district court found, as one of the grounds for its dismissal of the indictments, that the prosecutor's statements in his summation to the jury, made in knowing contravention of the court's order, were intended to bring about a mistrial. After careful review of the record, however, we conclude that this finding is clearly erroneous.

The finding of prosecutorial intent to provoke a mistrial was not the district court's sole basis for dismissing the indictments. In its ruling from the bench the district court cited in support two additional justifications. First, the court found an intent on the part of the prosecutor impermissibly to prejudice the defendant. *Oregon v. Kennedy*, which was decided subsequent to the district court's ruling, now establishes that this sort of "prosecutorial overreaching" is no obstacle to a second trial following the granting of a mistrial motion. At ——, 102 S.Ct. at 2089 & n.5. Second, the district court found that dismissal of the indictment was necessary to satisfy the court's institutional need to protect the integrity of the judicial process. As discussed in part II above, this last concern was—explicitly addressed by this Court in its reversal of Curtis' conviction, and it is now the "law of the case" that a retrial is the appropriate remedy for this problem. Because those two justifications do not support a dismissal here, the district court's order must rest solely on the finding of a prosecutorial intent to abort the trial.

Ordinarily a trial judge's interpretation of events occurring in that judge's courtroom are entitled to considerable deference. Relative to a reviewing court, the trial judge is in a preferred position to observe and evaluate conduct at the trial. For that reason, we pay special heed to the ·observations of the district judge in this case, and are inclined to respect the inferences he has drawn from the prosecutor's conduct. The weight we give to the judge's most recent findings, however, is tempered by the recognition that those findings—made at the time of the hearing on the motion to dismiss the indictments—are directly at variance with the same judge's stated observations at the time the conduct in question occurred, more than a year prior to the dismissal hearing. Although such a discrepancy does not itself invalidate factual findings, it erodes the validity of the findings at issue here because of their special nature.

■ The district court's finding apparently is grounded almost entirely upon the

obvious impropriety of the prosecutor's conduct—on the premise that his misconduct was so blatant and so likely to cause a mistrial that he could not reasonably have committed it unless he specifically intended to provoke a mistrial. The court observed that:

> Any attorney who would sit in this courtroom and represent any defendant, no matter how unskilled, would rise just by reason of that kind of defiance of the Court's order and move for a mistrial. Mr. Moser [defense counsel] did it skillfully and well and promptly. Any lawyer would have done that who understands English. And that was clearly intended to provoke that mistrial request.

Transcript of June 23, 1981, at 18–19. This inference which the court drew more than a year after the events in question is difficult to reconcile with the actual events that occurred at the time of trial. Although the district court found that the conduct at the trial was so patently improper that any attorney would have immediately demanded a mistrial for his or her client, the plain fact is that when the conduct occurred the defense attorney did not request a mistrial until the following day, after a chance to "reflect" on the nature of the misconduct. This delay indicates no delinquency on the part of the defense counsel—as the trial court properly commented—and does not directly reveal the subjective motivation of the prosecutor, but it does tend to suggest that the prosecutor, like the defense counsel, did not, at least initially, foresee the consequences of the misconduct. Even more damaging to the critical finding is the trial judge's own judgment, on the day following the misconduct, that a mistrial was not in order. In view of the failure of both the defense counsel and the trial judge to recognize immediately the need for a mistrial, it is difficult to credit the premise that the prosecutor could not have committed such conduct without knowing and in-

tending that a mistrial would result. We mean in no way to excuse the conduct of the prosecutor; we note only that, based on the recorded observations and reactions of the persons involved at the time, the conduct did not, in the context of that trial, *obviously* require a mistrial.[4] An inference of an intent to provoke a mistrial based solely on this alleged obviousness cannot be sustained in view of the record.

Other than this rationale, however, we can uncover no evidence in the record that would support the district court's finding. Nothing in the record indicates that the prosecutor believed that the jury was about to acquit Curtis. It may be that, as Curtis now contends, the Government was surprised by Curtis' entrapment defense. Such surprise, however, would not appear likely to make a new trial seem desirable to the prosecutor. There has been no showing that the Government had reason to hope it might uncover new evidence refuting that defense, or that it otherwise stood to gain from a mistrial. Rather, to the extent that the Government was surprised, the prosecutor's statement to the jury is more plausibly viewed as an over-zealous attempt to impeach the surprising testimony.

Moreover, the colloquy between the prosecutor and the bench following the improper comments to the jury indicates that the prosecutor at least proffered some justification for his remarks, immediately defending them as an "invited response" to statements by defense counsel in his summation. Transcript of April 23, 1980, at 3:47. The prosecutor elaborated the following day on his justification for his animadversions regarding Curtis' failure to mention his entrapment defense to the arresting officers:

> [PROSECUTOR]: It is clear that Your Honor addressed that concern prior to the closing arguments and there is no question that Your Honor had stated that I shouldn't address it in my closing.

---

4. The non-obviousness of the need for a mistrial after the prosecutor's statements is also suggested by the decision of this Court when it reversed Curtis' conviction. Although all three judges on that panel agreed that the prosecu-

tor's conduct was improper, one judge dissented from the majority's holding and argued that the misconduct did not require reversal. *United States v. Curtis*, 644 F.2d 263, 272 (3d Cir. 1981) (Weis, J., dissenting).

However, Your Honor, shall we say the rules in and of themselves were changed the moment that counsel took advantage of that to use that in his own closing at which point the Government was entitled under the Invited Response Doctrine to it.

The Government did ask leave of the Court to make the statement at the time and the Court I think properly made the cautionary instruction to the jury.

THE COURT: After the statement was done. What is the basis of your saying Mr. Moser invited the comment?

[PROSECUTOR]: Mr. Moser has stated to the jury that the Government had not asked Daniel Davis when he was first on the stand about the so-called transactions that Mr. Curtis testified to and that the Government then did not even bring him back to respond to those.

Transcript of April 24, 1980, at 4:55. Although this purported justification for the prosecutor's remarks about Curtis' failure to mention his entrapment allegations to the arresting officers is far from persuasive, it is significant that the argument was pressed by the prosecutor. If indeed the prosecutor believed, however erroneously, that his remarks were permissible, then he did not intend those remarks to provoke a mistrial. Even if, as appears more likely, the prosecutor's proffered justification did not reflect a good-faith belief that his comments were permissible, his successful opposition to the motion for mistrial tends to contradict the subsequent finding that the prosecutor sought to bring about that mistrial.

We conclude, therefore, that the district court erred in finding that the prosecutor intended to cause a mistrial. The rationale offered by the district court—that the misconduct was so blatant that the prosecutor must have known it would lead to a mistrial—is set aside as clearly erroneous. After reviewing the record, we can uncover no other evidence to support the court's finding as to the prosecutor's intent. Accord-

ingly, we hold that even if, under the double jeopardy clause, retrial is ever barred following an appellate reversal for prosecutorial misconduct—a question we do not decide here—the misconduct in this case was not of the sort that would give rise to double jeopardy.

V

The order of the district court will be reversed and the matter remanded for retrial.