

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-4-2007

# USA v. Williams

Precedential or Non-Precedential: Precedential

Docket No. 05-4292

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Williams" (2007). *2007 Decisions.* Paper 1709.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1709

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-4292

_____


UNITED STATES OF AMERICA,
                                        Appellant
                v.

KENNETH WILLIAMS,
a/k/a Junior


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00125)
District Judge: Honorable John P. Fullam

_____


Argued November 8, 2006

Before: SLOVITER, CHAGARES, and GREENBERG,
Circuit Judges

(Filed January 4, 2007)
_____


Richard P. Barrett
Robert A. Zauzmer   (Argued)
Office of United States Attorney
Philadelphia, PA l9l06

      Attorney for Appellant


1

Francis J. Genovese (Argued)
Solomon, Berschler, Warren, Schatz & Flood
Norristown, PA 19401

      Attorney for Appellee

OPINION OF THE COURT
____

SLOVITER, <u>Circuit Judge</u>.

     Before us is the Government's appeal of an order entered by the District Court granting the motion of defendant/appellee Kenneth Williams to dismiss the indictment on double jeopardy grounds, which followed the Court's grant of Williams' motion for a mistrial. The principal issue is the legal standard to be applied by the District Court in considering a motion to dismiss an indictment for what the District Court viewed as prosecutorial misconduct.

I.

     County detectives who were engaged in an undercover investigation into the distribution of cocaine base ("crack") had arrest warrants for Williams based on information that he had sold crack to detectives and cooperating sources. They seized Williams when the car he was driving came to rest in the parking area next to the Travel Lodge in Pottstown, Pennsylvania. According to the testimony of several of the detectives, after they arrested Williams they seized eighty-two bags of crack cocaine from his pocket. Some detectives proceeded to Williams' residence where, according to their testimony, they intended to wait for search warrants which other detectives were seeking. Williams' girlfriend lived in the house and initially refused the request to search. She later consented when she learned that Kevin Jones, who occupied the basement apartment, had a firearm under the futon where he had been sleeping. The detectives then searched the premises and seized additional drugs and two handguns, the one in Jones' futon and one in a closet near the front door. After the arrest, Williams was

2

questioned at the police station and, according to the Government, admitted to dealing in crack cocaine but denied possession of the handguns.

The District Court thereafter granted Williams' motion to suppress the evidence seized from his residence on the ground that his girlfriend's consent was not voluntary but denied Williams' motion to suppress his confession. Williams, who had felony drug convictions in 1998 and 2002, moved in limine to preclude introduction of those prior drug felonies, but withdrew the motion after the Government agreed in writing that it would not present that evidence in its case-in-chief. The Government, nonetheless, reserved the right to use that evidence on cross-examination if Williams testified.

Williams had been charged on three counts, but in light of the suppression order the Government proceeded to trial on only the count alleging possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841 (a)(1) based on the eighty-two bags of crack that the Government contends was seized from Williams' pocket when he was arrested.

As it had agreed, the Government presented its case without introducing evidence of Williams' prior felony drug convictions. Williams then took the stand to begin the defense portion of the case. He denied that he had made arrangements for a drug sale at the Travel Lodge. He denied that he had been carrying drugs when arrested and denied that he had confessed to selling drugs. The cross-examination by the Assistant U.S. Attorney proceeded as follows:

> Q.    You never said you'd sell bags for five dollars a piece; right?
>
> A.    No.
>
> Q.    As a matter of fact, you acted like you had no idea how much bags of cocaine sell for; right?

3

A.  Actually, the officer asked me how much do a bag – and he made the signs with his fingers, he said how much do a bag like this go for, like a bag this small?  I said, I don't know, probably five dollars.

Q.  You say probably, you're not familiar with the drug trade?

A.  Yes.

Q.  Yes, you are familiar with the drug trade?

A.  Yes, I grew up around drugs all my life.

Q.  As a matter of fact, you have two prior convictions for selling drugs?

[DEFENSE COUNSEL]:  Objection, your Honor.

THE COURT:  Objection sustained.

[DEFENSE COUNSEL]:  May we see you at side bar?  May we see your Honor?

THE COURT:  Yes, indeed.

(At side bar:)

THE COURT:  Yes?

([Defense counsel] responds, and his response is totally inaudible.)

THE COURT: Are you asking for one now?  I'm inclined to grant it, if you do, but I might also say if I grant a mistrial, it will be with the condition that any retrial both sides are represented by different lawyers.  What's obviously happening here is that the police were dealing with the drugs that were found in the house, which have been

4

suppressed, and they're getting that in by the back door, and confusing the witness.

[ASST. U.S. ATTY]: That's not true, Judge.

THE COURT: Of course it is.

[DEFENSE COUNSEL]: Judge, it's a point they're trying to get his prior convictions in through the back door as well.

THE COURT: Don't do it again. If you're not moving for a mistrial, I won't grant it.

(End of side bar.)

THE COURT: The jury will disregard that last question. Do you have something that's permissible? Let's hear it.

[ASST. U.S. ATTY]: Your honor, may we see you at side bar again?

THE COURT: No.

App. at 175-76.

The cross-examination then proceeded for a page and a half of the transcript concerning Williams' biographical information. The following question was then asked:

[ASST. U.S. ATTY]:
Q.      Mr. Williams, back in 1998 you were convicted of selling drugs back then; correct?

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: Objection sustained.

[DEFENSE COUNSEL]: I move for a mistrial.

5

THE COURT: And that will be – a mistrial will be granted.

Id. at 177.

Williams thereafter moved to dismiss the indictment. After a hearing, the District Court granted the motion to dismiss the indictment. The Court issued an opinion dated July 19, 2005. It noted that it had sustained defendant's objection to the prosecutor's question with respect to Williams' two prior convictions for selling drugs and that it had directed the prosecutor not to "pursue that line of questioning" again.[1] Id. at 5. The Court noted that the prosecutor shortly thereafter asked Williams if he was convicted "back in 1998" of selling drugs. The District Court stated that "[b]y promptly disobeying the court's instruction and inquiring about a seven-year-old previous conviction, the prosecutor must have known that it would trigger a mistrial." Id. at 6. The District Court acknowledged "that mere harassment or overreaching which results in a mistrial is not enough to bar retrial under the Double Jeopardy Clause[,]" but stated that "the prosecutor, like everyone else, must be deemed to have intended the readily foreseeable consequences of his actions[,]" and concluded "that the [i]ndictment must be dismissed." Id.

## II.

The Government argues that the District Court misapplied the legal standard as to when double jeopardy attaches following a Government-provoked mistrial. The relevant standard was enunciated by the Supreme Court in Oregon v. Kennedy, 456 U.S. 667, 675-76 (1982), where the Court stated:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion . . . does not bar retrial

---

[1] In fact, the actual words the judge used at the time were "Don't do it again." App. at 176 (emphasis added).

absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott*, 437 U.S. 82, 93 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States v. Dinitz*, [424 U.S. 600,] 609 [(1976)]. <u>Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion</u>.

(emphasis added).

The Court noted that in its earlier opinions it had also focused on the Government's intent. It cited, inter alia, <u>United States v. Dinitz</u>, 424 U.S. 600 (1976), where the opinion spoke in terms of "governmental actions intended to provoke mistrial requests," 424 U.S. at 611, and <u>United States v. DiFrancesco</u>, 449 U.S. 117, 130 (1980), where the Court said that "reprosecution of a defendant who has successfully moved for a mistrial is not barred, so long as the government did not deliberately seek to provoke the mistrial request." <u>Kennedy</u>, 456 U.S. at 678 n.8.

Shortly afer the <u>Kennedy</u> decision was announced, this court was presented with a somewhat similar issue in <u>United States v. Curtis</u>, 683 F.2d 769 (3d Cir. 1982). When the case first came to this court, we reversed the conviction and directed a new trial because the prosecutor had remarked about the defendant's silence in direct contravention of the district judge's warning. On remand, the district court held that further prosecution of the defendant was barred by the Double Jeopardy Clause. On appeal from that order, we reversed. We noted that

7

in dictum in <u>Burks v. United States</u>, 437 U.S. 1, 15 (1978), the Supreme Court had stated that prosecutorial misconduct fell within the class of grounds for reversal of a trial verdict that did not implicate the Double Jeopardy Clause. <u>Curtis</u>, 683 F.2d at 773. We held that there was no significant difference in application of the Double Jeopardy Clause when the new trial was required because of appellate reversal or because of prosecutorial misconduct. We concluded that a second trial "could constitute double jeopardy, if at all, only if the prosecutorial misconduct. . . . was *intended* to provoke the defendant into moving for a mistrial." <u>Id.</u> at 776 (internal quotation marks omitted).

Case law following <u>Kennedy</u> and <u>Curtis</u> has consistently emphasized that application of the double jeopardy bar is dependent on a showing of the prosecutor's subjective intent to cause a mistrial in order to retry the case. <u>See</u> <u>United States v. Coleman</u>, 862 F.2d 455, 458 (3d Cir. 1988) ("double jeopardy clause will not bar retrial absent *intent* on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause") (internal quotation marks and citation omitted); <u>United States v. Gilmore</u>, 454 F.3d 725, 729-30 (7th Cir. 2006) ("The key question is whether the prosecutor deliberately introduced the error in order to provoke the defendant into moving for a mistrial, and thereby rescuing a trial going badly. . . . Intent is a critical element to understand when determining if a prosecutor's actions intentionally triggered the mistrial."); <u>United States v. McIntosh</u>, 380 F.3d 548, 557 (1st Cir. 2004) (upholding district court's denial of motion to dismiss indictment on provoked-mistrial grounds, and noting that "prosecutorial error or even prosecutorial harassment that results in a mistrial will not unlatch the double jeopardy bar in the absence of the intent to cause a mistrial").

The district court in <u>Curtis</u> found that the prosecutor's statements in his summation to the jury commenting on the defendant's silence were made in knowing contravention of the court's order and were intended to bring about a mistrial, but we held that finding was clearly erroneous. 683 F.2d at 778. We recognized that ordinarily a trial judge's interpretation of events

8

occurring in that judge's courtroom are entitled to considerable deference; nonetheless, after reviewing the record, we concluded in Curtis that the District Court's inference of an intent to provoke a mistrial could not be sustained.

The Government argues that in this case the "district court seemed to accept the prosecutor's representation that he did not intend to cause a mistrial." Appellant's Br. at 28. It notes that the District Court stated in its opinion that "I have no doubt of the prosecutor's sincerity in wishing, after the fact, that he had not caused a mistrial[.]" App. at 6. It is the Government's position that this demonstrates that the District Court believed that the prosecutor only mistakenly, not intentionally, triggered a mistrial by his questioning.

At the hearing on the defendant's motion to dismiss the indictment, the prosecutor explained to the Court that he had been confused as to what the Court directed him not to repeat when the Court sustained the objection to his first question to Williams regarding his prior convictions. The prosecutor stated that he understood that the Court was directing him not to question Williams about the evidence that was suppressed (drugs and firearms found in the residence). Review of the trial transcript shows that was a reasonable conclusion because the District Court stated during the sidebar, "[w]hat's obviously happening here is that the police were dealing with the drugs that were found in the house, which have been suppressed, and they're getting that in by the back door. . . ." Id. at 175-76.

At the hearing, the prosecutor explained to the Court, "I misunderstood that, and I applied your words there to the reason for sustaining the objection." Id. at 196. The prosecutor then explained that he was not asking about evidence that was suppressed when he asked the question that elicited the mistrial. His explanation is supported by the fact that he began the question that the Court found objectionable with the words "Back in 1998" in order "to insure that the defendant was clear that I was not asking about evidence that was suppressed, and the Court also was clear." Id. The prosecutor offered to testify regarding his practice, his training, and as to his intent whether

to cause a mistrial but the District Court declined to hear any such evidence.

Reviewing the record, we conclude that at most there was confusion about the basis for the District Court's direction to the prosecutor not to do "it" again. Id. at 176. Certainly there was no explicit direction by the District Court to the prosecutor not to ask any questions about Williams' prior felony convictions.

Apparently, the U.S. Attorney's Office in this district follows a general practice of advising the trial court in advance that it wishes to impeach a defendant with evidence of prior convictions. Had that been done in this case, the confusion undoubtedly would have not occurred. However, as the District Court recognized, there is no requirement that the prosecutor seek the District Court's permission in advance. Under Rule 609 of the Federal Rules of Evidence, "evidence that an accused has been convicted [of a crime punishable by death or impeachment in excess of one year under the law under which the witness was convicted] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a)(1). Only if the evidence is of a conviction more than ten years old is there a requirement that there be advance notice to the adverse party of intent to use such evidence so that the court can determine whether the probative value substantially outweighs the prejudicial effect. Fed. R. Evid. 609(b). Inasmuch as the drug felony convictions with which the prosecutor sought to impeach Williams (who had testified that he was not familiar with the drug trade) occurred less than ten years before, there was no requirement for advance notice. The Government notes that notwithstanding the lack of any such requirement, on the morning of Williams' cross-examination the prosecutor did advise defense counsel of his intent to impeach Williams.

Although it is often difficult for an appellate court to determine the prosecutor's intent from the cold record, our decision in Curtis gives us an example to follow in making such a determination. In Curtis, this court concluded that the prosecutor's conduct "did not, in the context of that trial,

10

obviously require a mistrial." 683 F.2d at 777. We stated, "[n]othing in the record indicates that the prosecutor believed that the jury was about to acquit Curtis." Id. The same can be said in this case.

The Government's case appeared to be going well. There had been consistent testimony by four local officers who had personal knowledge of the circumstances surrounding Williams' arrest. Detective Edward Kropp, who was assigned to the Montgomery County District Attorney's Office for two-and-a-half years and previously worked for the Pottstown Police Department for seventeen years, was the lead detective in this matter. He testified that he searched Williams after the arrest and seized from the left side of Williams' trousers a sandwich baggie containing eighty-two red-tinted zip-lock bags of an off-white, rock-like substance and one orange zip-lock bag containing an off-white, rock-like substance. Detective Samuel Gallen, who had been in law enforcement for approximately twenty-five years, confirmed Kropp's testimony and testified that he searched the front right pocket of Williams' trousers and retrieved a $50 bill. Detective David Evans also testified that he was present at the search and observed the recovery of the drugs from Williams' person. The informant, who had been one of Williams' customers, testified that he was at the Travel Lodge on the date in question as part of a pre-arranged buy-bust transaction. Pennsylvania State Parole Board agent Dennis Powell testified he was in the hotel room with the informant along with Pottstown police officer Todd Richards, when the informant called Williams to meet him at the Travel Lodge. Lindsay Rademaker, a forensic chemist with the National Medical Services, testified as to her procedure in testing substances for the presence of controlled substances and identified the exhibit containing the material submitted for analysis by the police officers which she found to contain cocaine base. Both Detective Gallen and Detective Mark Minzola testified as to the circumstances under which Williams confessed that he owned the crack that was found on his person. Detective Gallen noted that Williams was very insistent that his girlfriend had no responsibility for the cocaine.

11

Although in his direct examination Williams denied having the packages of crack on him, denied that he went to the Travel Lodge to sell crack, and denied that he confessed to possessing the crack that was seized from his person notwithstanding his initials on some of the pages of the confession and his signature at the end, there was no objective reason why the prosecutor would have believed that the trial was going badly for the Government and that the jury might acquit. Thus, in this case as in Curtis, "there has been no showing that the Government had reason to hope it might uncover new evidence . . . or that it . . . stood to gain from a mistrial." Id.

In United States v. Gonzalez, the Court of Appeals for the Tenth Circuit reversed a district court dismissal of the indictment with prejudice, stating, "to the extent the [district court] allowed an inference of prosecutorial intent to force a mistrial in the absence of objective evidence, the analysis was contrary to *Kennedy* and our precedent, including [*United States v. McMurry*, 818 F.2d 24, 25-26 (10th Cir. 1987)]." 248 F.3d 1201, 1204 (10th Cir. 2001). In Gonzalez, as here, the district court had stated, speaking of the prosecutor, that a person intends the natural and probable consequences of his or her acts if those acts are knowingly done. The Court of Appeals, in reversing, stated:

> The practical implications of the district court's analysis of intent in this context also merit discussion. By focusing on the natural and probable consequences of prosecutorial conduct rather than the intent underlying such conduct, the standard employed by the district court would, as the government argues, "convert *Kennedy*'s narrow exception into the rule. . . ." Aplt. Br. at 16. That is, under the district court's reading of *Kennedy, any* prosecutorial conduct that induces the defendant to request a mistrial could bar retrial.

Id. at 1204-05.

The statement by the district court in the Gonzalez case parallels that made by the District Court in this case. Here also,

the District Court's analysis was incorrect.

Because the applicable standard for a double jeopardy bar as a result of prosecutorial misconduct requires a showing that the Government had in fact intended to goad the defendant into requesting a mistrial, and there was no such showing in this case, it was error to dismiss the indictment. Accordingly, the order of the District Court is reversed and this matter is remanded for a new trial.