NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4032
_____

UNITED STATES OF AMERICA

v.

GERARDO SANDOVAL,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 5:08-CR-00055-1)
District Judge: Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
April 26, 2012
_____

Before: GREENAWAY, JR., ROTH, and TASHIMA,[*] *Circuit Judge*s.

(Opinion Filed: May 17, 2012 )
_____

OPINION
_____

_____

[*] Hon. A. Wallace Tashima, Circuit Judge, United States Court of Appeals for the Ninth
Circuit, sitting by designation.

GREENAWAY, JR., *Circuit Judge*.

Appellant Gerardo Sandoval ("Sandoval") and two co-defendants were indicted on two charges related to the distribution of marijuana. On the second day of Sandoval's trial, after the testimony of two Drug Enforcement Administration ("DEA") agents containing prejudicial information, arguably hearsay, Sandoval sought and was granted a mistrial. Subsequently, on retrial, the jury convicted him on both counts. The District Court sentenced Sandoval to ninety-seven months of imprisonment and four years of supervised release. He filed a timely appeal and now argues to this Court that he should be granted a judgment of acquittal on double jeopardy grounds. He additionally argues that the evidence was insufficient to convict him and that his sentence is unreasonable.

Because Sandoval himself moved for a mistrial and the prosecution did not intend to force a mistrial, we find his double jeopardy claim meritless. The evidence was sufficient to convict and his sentence is both procedurally and substantively reasonable. Accordingly, we will affirm the judgment and sentence below.

## I.   BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Based on a tip, DEA agents began surveillance of Rafael Jimenez and Gerardo Sandoval, whom they believed were involved in marijuana distribution. The agents observed Jimenez and Sandoval drive to Givler's Auto Clinic, where the two men

1

purchased a trailer. Several days later, Sandoval was observed with the trailer, which was then hooked to a pick-up truck and driven to a mushroom farm. At the farm, the pick-up truck and a van were parked close to each other. The DEA agent who had trailed the pick-up truck smelled marijuana, and agents recovered 1,566 pounds of marijuana from the two vehicles. One of Sandoval's co-defendants was in the truck and the other was in the van. Sandoval and Jimenez were stopped nearby while driving away from the farm in a silver Audi.

Sandoval and his two co-defendants were indicted and charged with conspiring to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846 (Count One), and with possessing 700 kilograms of marijuana with intent to distribute for remuneration, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2 (Count 2). While his two co-defendants pled guilty, Sandoval went to trial.

At Sandoval's trial, DEA Special Agent Rodgers was the Government's first witness. After a question about what Rodgers had told the owner of Givler's Auto Clinic, the District Court cautioned Rodgers to refrain from relating hearsay to the jury. At sidebar, the prosecutor affirmed that she had instructed Rodgers to refrain from invoking hearsay. Nonetheless, Rodgers subsequently stated, "Surveillance agents informed us that the trailer was being—" before an objection was lodged. (App. 38-39.) The remainder of the testimony was uneventful.

2

The Government's second witness was DEA Special Agent Matsko. The District Court had issued an *in limine* ruling that Matsko could not mention the existence of a tip from an informant. Nonetheless, Matsko mentioned that he had instructed other agents to establish surveillance at a particular location because a large load of marijuana was expected to arrive there. He also stated that he told the agents that they should "look out for Rafael Jimenez and Gerardo Sandoval." (App. 43-44.)

At this point, the District Judge expressed her displeasure at a sidebar and acknowledged that she "honestly [didn't] know what to do at this point." (App. 46.) After the sidebar, outside the presence of the jury, the Judge had Matsko's testimony read back. Sandoval's counsel indicated that he would move for a mistrial, as he did not believe striking the testimony could remedy the problem. The Judge then repeated that she could not think of any way to reverse the damage caused by the hearsay testimony. After a conversation in chambers with counsel, she granted the mistrial.

Retrial began the following day, and the jury returned a guilty verdict two days later. The District Court imposed a sentence of ninety-seven months of imprisonment and four years of supervised release.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over a challenge to the conviction under 28 U.S.C. § 1291 and over a challenge to the sentence under 18 U.S.C. § 3742(a).

We employ three different standards of review for the three issues Sandoval raises. Our review of double jeopardy challenges is plenary. *United States v. Dees*, 467 F.3d 847, 853 (3d Cir. 2006). In evaluating a sufficiency of the evidence challenge, we view the evidence in the light most favorable to the Government and sustain the verdict where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jones*, 566 F.3d 353, 361 (3d Cir. 2009) (internal quotation marks citation omitted). Finally, we review both the procedural and substantive reasonableness of a sentence imposed by the District Court for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

## III.   ANALYSIS

### A. Double Jeopardy

The double jeopardy clause prohibits any person from being "twice put in jeopardy of life or limb" based on the same offense. U.S. Const. amend. V. Generally, though, "where the defendant seeks a mistrial, '[n]o interest protected by the Double Jeopardy Clause is invaded.'" *United States v. Rivera*, 384 F.3d 49, 54 (3d Cir. 2004) (quoting *United States v. Scott*, 437 U.S. 82, 100 (1978)). In such a case, a subsequent prosecution usually does not offend the Constitution. *Id.*

However, there is a "narrow exception" to the rule that a mistrial sought by the defendant cannot violate the double jeopardy clause. *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). The Government may not bring a second prosecution where, in the first trial,

4

"the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial.'" *Id.* (quoting *United States v. Dinitz*, 424 U.S. 600, 611 (1976)).  The test here is one of prosecutorial intent; "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy." *Id.* at 676.

In *United States v. Williams*, we noted that post-*Kennedy* case law "has consistently emphasized that application of the double jeopardy bar is dependent on a showing of the prosecutor's *subjective intent* to cause a mistrial in order to retry the case." 472 F.3d 81, 85-86 (3d Cir. 2007) (emphasis added).  In that case, the Government argued that the prosecutor had mistakenly, and not intentionally, triggered a mistrial with his questioning. *Id.* at 86.  We concluded that evidence in the record did not show that the prosecutor intended to provoke the defendant into seeking a mistrial. *Id.* at 87.  In so doing, we adopted the Tenth Circuit's conclusion that a prosecutor's knowledge of the "natural and probable" causes of his actions did not supply the intent required for the double jeopardy exception to apply. *Id.* at 88; *see also United States v. Powell*, 982 F.2d 1422, 1429 (10th Cir. 1992) ("Carelessness or mistake on the part of the prosecution, as opposed to a calculated move aimed at forcing the defendant to request a mistrial, is not sufficient to bar retrial under the Double Jeopardy Clause.").

Sandoval argues that, although "the Prosecutor might not have set out to cause a mistrial," the Government should be "charged with the knowledge that a mistrial might or

5

would, in fact, occur" when its witness introduced hearsay testimony that the Judge had already made clear would not be admissible. (Appellant's Br. 12.) Sandoval's concession, though, ends the inquiry. Given our decision in *Williams*, we are foreclosed from considering the argument that a prosecutor's knowledge that her actions might lead the defendant to seek a mistrial supplies the requisite level of intent required for the defendant to invoke double jeopardy after moving for a mistrial.

B. Sufficiency of the Evidence

In order to prevail on his sufficiency of the evidence challenge, Sandoval must demonstrate that, viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Jones*, 566 F.3d at 361.

Sandoval contends that the evidence was insufficient to connect him to the conspiracy, but he acknowledges testimony that Sandoval had offered to pay his co-conspirator $2,000 to transport marijuana and that Sandoval was present at the scene of the crime. (Appellant's Br. 19-20.) There was also testimony at trial that Sandoval purchased the trailer used in the crime and that he stayed in constant phone communication with a co-conspirator while the marijuana was being transported. This evidence disproves the argument that no rational juror could find that Sandoval was involved in the conspiracy.

6

C.  Reasonableness of the Sentence

Finally, the District Court did not abuse its discretion in sentencing Sandoval.  The burden rests with the defendant to demonstrate that the sentence was not reasonable. *United States v. King*, 454 F.3d 187, 194 (3d Cir. 2006).  The sentence was procedurally and substantively reasonable, because the District Court considered the 18 U.S.C. § 3553(a) factors and imposed a sentence within the Guidelines range.  The transcript of the sentencing hearing shows that the Court understood the breadth of its discretion. After taking into account Sandoval's actions and background, it nonetheless specifically chose not to vary downward.  The sentence is reasonable.  Accordingly, Sandoval has not met his burden here.

## IV.  CONCLUSION

For the reasons set forth above, we will affirm the conviction and sentence issued by the District Court.

7