**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1734

_____

UNITED STATES OF AMERICA

v.

GREGORY BROWN, JR.,
                    Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-16-cr-00235-001)
District Judge: Honorable David Stewart Cercone

_____

Argued: January 26, 2021

Before: RESTREPO, BIBAS, and PORTER,
*Circuit Judges*.

(Filed:  April 13, 2021)

_____

David B. Fawcett, III
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Lisa B. Freeland
Samantha L. Stern **[ARGUED]**
OFFICE OF FEDERAL PUBLIC DEFENDER
1001 Liberty Avenue, Suite 1500
Pittsburgh, PA 15222

*Counsel for Appellant*

Scott W. Brady
Laura S. Irwin
Haley F. Warden-Rodgers **[ARGUED]**
OFFICE OF UNITED STATES ATTORNEY
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

*Counsel for Appellee*

————————

OPINION OF THE COURT

————————

PORTER, *Circuit Judge*.

Gregory Brown's family home burned down in 1995. Three firefighters died fighting the blaze. The government suspected that Brown had started the fire at his mother's request in an attempt to collect on a renter's insurance policy. A com-

2

bination of local, state, and federal authorities prosecuted him in state court for arson and other offenses. He was convicted and sentenced to life in prison. Brown later discovered that the prosecution had failed to disclose material evidence, and a post-conviction court vacated his conviction and ordered a new trial. The United States now wants to try Brown again, this time in federal court.

Brown moved to dismiss the federal charges. He also moved to compel discovery to support his claims. The District Court denied both motions. On appeal, Brown argues that a second prosecution for the same conduct violates the Double Jeopardy Clause. He recognizes that the dual-sovereignty doctrine would defeat his claim because a state crime is not "the same offense" as a federal crime, even if for the same conduct. So he asks that we be the first circuit court to apply an exception to the dual-sovereignty doctrine because, he says, the state prosecution was merely a tool of the federal authorities. But we need not reach that question. Brown's claim fails for a more obvious reason: retrying a defendant because the conviction was reversed for trial error is not a second jeopardy. Regardless of whether it proceeds in state or federal court, Brown's second prosecution does not violate the Double Jeopardy Clause. The District Court did not err in denying Brown's motion to dismiss the indictment and his motion to compel discovery on the dual-sovereignty issue, so we will affirm.

I

A

Around midnight on February 14, 1995, firefighters responded to a fire at Brown's residence. Brown's mother, Darlene Buckner, had been renting the home since 1990.

3

Brown, who was seventeen years old at the time, lived there with his mother and several family members. After arriving on the scene, six firefighters entered the basement, where the fire had originated. Several of the firefighters became trapped and died when a staircase collapsed.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") opened an investigation. Chemical samples from the basement confirmed the presence of gasoline, and investigators located a gas can close to what an expert testified was the fire's origin. ATF concluded that the fire was intentionally set and offered a $15,000 reward for information leading to arrest and conviction. A witness, Keith Wright, came forward with testimony undermining Brown's alibi that he had been shopping with his mother at the time of the fire. Another witness, Ibrahim Abdullah, said Brown later confessed that he had started the fire.

Local, state, and federal authorities formed a joint prosecution team and brought Brown's case in state court. In 1997, Brown and Buckner proceeded before a consolidated jury trial. The joint prosecution team consisted of an Assistant District Attorney for Allegheny County and an Assistant U.S. Attorney. The prosecution's witnesses denied receiving payment or having been promised payment in exchange for their testimony. The jury convicted Brown on three counts of second-degree murder, two counts of arson, and one count of insurance fraud. Brown was sentenced to three consecutive terms of life imprisonment for each murder conviction and a consecutive term of 7.5 to 15 years' imprisonment for the arson convictions.

B

A few months after trial, Brown filed post-sentence motions arguing, among other things, that he was entitled to an evidentiary hearing because ATF agents offered money to potential witnesses. The court declined to hold an evidentiary hearing because it found no evidence that any witness who testified received reward money. On appeal, the Pennsylvania Superior Court vacated one of the arson charges but otherwise rejected Brown's arguments. The Pennsylvania Supreme Court denied Brown's petition for allowance of appeal.

In 2001, Brown sought habeas relief in federal court, again claiming that the prosecution failed to disclose that it had paid witnesses to testify against him. At oral argument, the Commonwealth's attorney said that he had reviewed ATF records and contacted the prosecutors and had not seen any record of witness payment. The District Court denied Brown's petition and request for an evidentiary hearing. This Court denied Brown's request for a certificate of appealability.

Nearly a decade later, Brown filed a petition in state-court under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541–46, alleging newly discovered evidence based on an expert opinion about the cause of the fire. Meanwhile, the Innocence Institute at Point Park University filed a Freedom of Information Act ("FOIA") request with ATF, asking for all records relating to the payment of reward money in Brown's case. In response to the FOIA request, ATF provided two canceled checks, with identifying information redacted, showing it had made payments of $5,000 and $10,000 in August 1998 relating to the fire. The Innocence Institute then contacted one of the witnesses, Abdullah, who said he received $5,000 from an ATF agent after Brown's trial.

5

Armed with this new information, Brown filed an amended PCRA petition. Soon after, counsel for Brown located another witness, Wright, who acknowledged receiving $10,000 from ATF for his testimony. Brown filed a second amended PCRA petition that reframed Wright's acknowledgment. Brown filed four more PCRA petitions as counsel continued to uncover evidence corroborating the witnesses' accounts that they had understood they would receive—and in fact received—money in exchange for their trial testimony. The PCRA court found that Brown's claims about the prosecution's nondisclosure of the witnesses' rewards satisfied exceptions to the PCRA's time-bar and granted Brown a new trial. The Superior Court affirmed.

Upon remand to the state trial court, Brown moved to dismiss the charges on double-jeopardy grounds. While that motion was pending, a federal grand jury indicted Brown, charging him with destruction of property by fire resulting in death under 18 U.S.C. § 844(i). The Commonwealth then filed a motion for *nolle prosequi* to dismiss the state charges. The state court granted the motion and dismissed the state charges.

Brown moved to dismiss the federal indictment. He argued that (1) the prosecution's misconduct violated his due-process rights and a new trial cannot cure that violation; (2) the Double Jeopardy Clause barred the second prosecution; (3) the statute of limitations barred the prosecution; and (4) the prosecution was vindictive because it sought enhanced penalties through federal indictment. To support his claims, Brown sought to subpoena records regarding the coordinated efforts of state and federal prosecutors. The District Court granted the subpoena. The prosecution turned over two sets of documents, but Brown moved to compel production of other documents he thought would be more responsive to the dual-sovereignty

6

issue. The District Court denied Brown's motion to compel because the requested documents went entirely to the dual-sovereignty argument, and the court declined to reach the dual-sovereignty issue "without a compelling reason to expand the Supreme Court's holding in in [sic] *Oregon v. Kennedy*, 456 U.S. 667 (1982)." App. 587.

The Supreme Court reaffirmed the vitality of the dual-sovereignty doctrine in *Gamble v. United States*, 139 S. Ct. 1960 (2019). The District Court requested supplemental briefing on *Gamble* and also asked the parties to address whether *Bartkus v. Illinois*, 359 U.S. 121 (1959), creates an exception to the dual-sovereignty doctrine applicable in Brown's case. After hearing arguments, the court denied the motion to dismiss, holding that the cooperation between state and federal law enforcement did not meet the standard necessary to apply the *Bartkus* exception. The court's decision did not address the applicability of the *Kennedy* exception. Brown timely appealed the denial of his motion to compel discovery and the denial of his motion to dismiss.

II

The District Court had jurisdiction under 28 U.S.C. § 3231 to review Brown's prosecution for violating 18 U.S.C. § 844. We have jurisdiction under 28 U.S.C. § 1291 and the collateral-order doctrine. *See Abney v. United States*, 431 U.S. 651, 662 (1977). Denials of motions to dismiss indictments are typically not final judgments, but "pretrial orders rejecting claims of [double] jeopardy, such as that presently before us, constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of [28 U.S.C. § 1291]." *Id.*

7

We review double-jeopardy challenges de novo, *United States v. Rigas*, 605 F.3d 194, 203 n.7 (3d Cir. 2010), and the denial of a motion to compel discovery for abuse of discretion, *United States v. Berrigan*, 482 F.2d 171, 181 (3d Cir. 1973).

## III

The Double Jeopardy Clause says that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. But the clause's prohibition against a second prosecution for the same offense is not absolute. Two examples are relevant here. First, under the trial-error rule, the Double Jeopardy Clause "does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988). Second, the dual-sovereignty principle allows a federal indictment for the same conduct punished under state law—and vice versa—because the two prosecutions, under different sovereigns, are not "for the same offence." U.S. Const. amend. V; *Gamble*, 139 S. Ct. at 1965–66.

The District Court held that the dual-sovereignty principle forecloses Brown's motion to dismiss the federal indictment. We will affirm the court's denial of Brown's motion to dismiss, but the trial-error rule is the more appropriate avenue for dismissal in this case.

## A

The trial-error rule allows the prosecution "to retry a defendant where the conviction is reversed due to 'trial error' such as 'incorrect receipt or rejection of evidence, incorrect

8

instructions, or prosecutorial misconduct.'" *McMullen v. Tennis*, 562 F.3d 231, 237 (3d Cir. 2009) (quoting *Burks v. United States*, 437 U.S. 1, 15 (1978)). But even if the trial error is discovered later—say, in collateral proceedings—the rule still permits the defendant to be retried.[1] *Id.* Additionally, a retrial is generally not barred when a defendant requests a mistrial, *United States v. Dinitz*, 424 U.S. 600, 607, 611 (1976), or when a defendant consents to a mistrial, *United States v. Kennings*, 861 F.2d 381, 385 (3d Cir. 1988). In those situations, a retrial does not violate the Double Jeopardy Clause because assenting to a mistrial is "a deliberate election on [the defendant's] part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott*, 437 U.S. 82, 93 (1978).

The mistrial rule itself has exceptions, but only one is relevant here. In *Oregon v. Kennedy*, the Supreme Court held that the Double Jeopardy Clause forbids retrial when "the conduct giving rise to the successful motion for a mistrial was

---

[1] Here, the prosecution filed a *nolle prosequi* to dismiss the state charges and proceeded under a new federal indictment, but this does not change the analysis. The trial-error rule still applies because "a nolle works no acquittal, and leaves the prosecution just as though no such count had ever been inserted in the indictment." *Dealy v. United States*, 152 U.S. 539, 542 (1894). That Brown's second prosecution proceeds under a new (federal) indictment also changes nothing. "[A] defendant who procures a judgment against him upon an indictment to be set aside may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." *Ball v. United States*, 163 U.S. 662, 672 (1896); *accord Burks v. United States*, 437 U.S. 1, 13–14 (1978).

intended to provoke the defendant into moving for a mistrial." 456 U.S. 667, 679 (1982). The paradigmatic case of the *Kennedy* exception is where the prosecution fears acquittal and provokes a mistrial in order to present a stronger case on retrial. *See id.* at 678–79; *United States v. Curtis*, 683 F.2d 769, 777 (3d Cir. 1982). The Fifth Amendment does not permit such gamesmanship. When the government intentionally provokes a mistrial, the Double Jeopardy Clause acts as a "shield" against prosecutorial misconduct designed to secure "'a more favorable opportunity to convict' the defendant." *United States v. Coleman*, 862 F.2d 455, 458 (3d Cir. 1988) (quoting *Downum v. United States*, 372 U.S. 734, 736 (1963)). Brown invites us to extend the *Kennedy* exception beyond the mistrial context. We decline that invitation.

The *Kennedy* exception is narrow. The exception is rooted in "the right of the defendant to have his trial completed before the first jury empaneled to try him." *Kennedy*, 456 U.S. at 673. "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676; *see Dinitz*, 424 U.S. at 611. The prosecution's intent is key. *Kennedy* bars a retrial for prosecutorial misconduct only if "the conduct giving rise to the successful motion for a mistrial was *intended* to provoke the defendant into moving for a mistrial." *Curtis*, 683 F.2d at 776 (internal quotation marks omitted) (quoting *Kennedy*, 456 U.S. at 679). In the absence of such intent, double jeopardy does not bar retrial since the defendant voluntarily waives his right "to have his trial completed before the first jury empaneled to try him" when he requests a mistrial. *Kennedy*, 456 U.S. at 673; *see Dinitz*, 424 U.S. at 607–08. But that right would be a "hollow shell" if the

10

prosecution were able to avoid double-jeopardy preclusion by intentionally provoking a defendant into moving for a mistrial. *Kennedy*, 456 U.S. at 673. The *Kennedy* exception applies in that limited scenario, where the prosecutorial misconduct was intended to prejudice the defendant's right to have his trial completed by the first jury empaneled. *Id.*

B

The *Kennedy* exception is inapplicable here because there was no motion for a mistrial. Brown's trial proceeded to a jury and culminated in a conviction that was vacated on collateral review. Before we even reach the question of prosecutorial intent, the *Kennedy* exception does not apply because the prosecution's conduct did not provoke a "successful motion for a mistrial." 456 U.S. at 679. Brown's success in getting his conviction set aside through collateral attack does not prohibit the government from retrying him. *See Lockhart*, 488 U.S. at 38. Short of accepting Brown's invitation to expand the *Kennedy* exception beyond the mistrial context, Brown's case falls outside of this narrow exception.

We have not decided whether the *Kennedy* exception applies beyond mistrials. In *United States v. Curtis*, we discussed in dicta whether the *Kennedy* exception would apply to appellate reversals resulting from prosecutorial misconduct intended to provoke a mistrial request. *Curtis*, 683 F.2d at 774. It is possible that a trial judge could err in denying a motion for mistrial only for an appellate court to order a retrial based on the same misconduct. If the *Kennedy* exception applies only to mistrials, misconduct caught at the trial level would bar a retrial, but the same misconduct caught at the appellate level would not. In *Curtis*, we expressed concern about this apparent inconsistency "to afford a defendant less constitutional protec-

11

tion simply because a trial judge erred in denying a mistrial request." *Id.* We attributed "considerable force to [the] proposition" that the *Kennedy* exception "should apply with equal weight to appellate reversals that result from prosecutorial misconduct committed with the intent to provoke a mistrial request." *Id.* But we did not decide that issue in *Curtis*. We instead relied, as nearly all courts do when confronting the *Kennedy* exception, on the lack of evidence that the prosecutor's statements were intended to provoke a mistrial. *Id.* at 776.

Today, we resolve the issue and hold that the *Kennedy* exception does not apply beyond the mistrial context to cases in which a post-conviction court has ordered a new trial due to prosecutorial misconduct. In *Kennedy*, the Supreme Court already addressed the concerns we expressed in *Curtis*:

> [W]e . . . hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the *successful motion for a mistrial* was intended to provoke the defendant into moving for a mistrial.

12

*Kennedy*, 456 U.S. at 679 (emphasis added).[2] The *Kennedy* exception has two predicates: (1) a defendant's successful motion for a mistrial, and (2) the prosecution's intent to provoke the mistrial. The cases from which the Supreme Court derived the *Kennedy* exception support this reading. *See United States v. DiFrancesco*, 449 U.S. 117, 130 (1980) ("[R]eprosecution of a defendant who has *successfully* moved for a mistrial is not barred, so long as the Government did not deliberately seek to provoke the mistrial request." (emphasis added)); *Dinitz*, 424 U.S. at 606 (reviewing a mistrial declaration); *United States v. Jorn*, 400 U.S. 470, 478 (1971) (plurality opinion) (same); *United States v. Tateo*, 377 U.S. 463, 468 & n.3 (1964) (reinstating charges where the defendant's conviction had been overturned in collateral proceedings but noting that different considerations would obtain "[i]f there were any intimation in a case that prosecutorial or judicial impropriety justifying a mistrial resulted from a fear that the jury was likely to acquit the accused").

The Supreme Court has drawn a distinction between mistrials and overturned convictions. *See Tateo*, 377 U.S. at 468. This distinction exists in part because one of the principal guarantees of the Double Jeopardy Clause is "the right of the defendant to have his trial completed before the first jury

---

[2] *Curtis* characterizes the Court's opinion in *Kennedy* as a plurality opinion. *See United States v. Curtis*, 683 F.2d 769, 775 (3d Cir. 1982). That is incorrect. The syllabus in the bound copy of the United States Reports reveals that Chief Justice Rehnquist's opinion in *Kennedy* commanded five votes. *See Oregon v. Kennedy*, 456 U.S. 667, 668 (1982). Justice Powell's concurrence notwithstanding, the Chief Justice's opinion is the "opinion of the Court" and binding law. *Id.*

empaneled to try him." *Kennedy*, 456 U.S. at 673. The *Kennedy* exception forecloses the prosecution's ability to induce a defendant into waiving that right by provoking a mistrial. *Id.* But, for example, when a judge *denies* a motion for mistrial, the defendant has not been deprived of his "valued right to complete his trial before the first jury." *Id.* A defendant receives the opportunity for acquittal at trial, which is precisely what the prosecution is trying to avoid by intentionally provoking a mistrial. So we distinguish between cases in which a mistrial is declared from cases that result in a conviction. *See id.* at 676 & n.6.

That distinction matters. "[I]f the first trial has ended in a conviction, the double jeopardy guarantee 'imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside,'" with one exception. *DiFrancesco*, 449 U.S. at 131 (emphasis omitted) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 720 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). The "narrow exception" is that retrial is barred when the reviewing court has found the evidence legally insufficient to support conviction. *Tibbs v. Florida*, 457 U.S. 31, 40–41 (1982); *see also Kennedy*, 456 U.S. at 676 n.6. Brown does not

suggest that the insufficient-evidence exception applies here, and it is not our role to carve out another.[3]

The Supreme Court considered and rejected the concerns motivating our dicta in *Curtis* as to allowing retrial beyond the mistrial context. The Court explicitly rejected a broader rule that would have required merely "bad faith conduct" or "harassment" on behalf of the prosecutor, rather than intent to provoke a mistrial. *Kennedy*, 456 U.S. at 674 (internal quotation marks omitted). The Court even foresaw the scenario we identified in *Curtis*, where prosecutorial misconduct resulting in a mistrial would bar retrial, but the same conduct caught on appeal would not. *Id.* at 676–77. In that situation, "the Double Jeopardy Clause would present no bar to retrial" because it would be analyzed as a post-conviction case, not a

---

[3] Neither does the logic underlying the insufficient-evidence exception apply in this case. When a reviewing court finds the evidence legally insufficient to support conviction, it "means that the government's case was so lacking that it should not have even been *submitted* to the jury." *Tibbs v. Florida*, 457 U.S. 31, 41 (1982) (internal quotation marks omitted) (quoting *Burks*, 437 U.S. at 16). The Double Jeopardy Clause bars retrial in those cases because (1) a reversal based on insufficiency of the evidence has the "same effect" as acquittal, and (2) the clause prevents the state from "perfecting its evidence through successive attempts at conviction." *Id.* Neither of those justifications support an extension of the *Kennedy* exception.

15

mistrial case.[4] *Id.* at 676 & n.6. A broader rule would result in even more cases in which the prosecutorial misconduct should have resulted in a mistrial but was caught only on appeal. *Id.* at 676–77. The narrower rule that the Court adopted mitigates the problem by shrinking the range of prosecutorial misconduct that triggers the exception. *Id.* at 675–76. In other words, the Court framed the *Kennedy* exception narrowly *because of* the same concerns we expressed in *Curtis*, not in spite of those concerns.

Every circuit to address the issue has declined to expand the *Kennedy* exception beyond the mistrial context. The Tenth Circuit held in *United States v. McAleer* that *Kennedy* did not apply where the defendants did not obtain a mistrial but had instead convinced the district court to set aside the guilty verdicts. *See United States v. McAleer*, 138 F.3d 852, 855–56 (10th Cir. 1998). The court reasoned that because the defendants were not deprived of their rights to have their case submitted to the first jury, the *Kennedy* exception did not apply. *Id.* at 856. The Seventh Circuit likewise held that "a defendant who did not move for a mistrial on the basis of intentional prosecu-

---

[4] Justice Stevens argued in his concurrence that "the defendant's choice—to continue the tainted proceeding or to abort it and begin anew—can be just as 'hollow' in this situation as when the prosecutor intends to provoke a mistrial." *Kennedy*, 456 U.S. at 689 (Stevens, J., concurring in the judgment) (footnote omitted). The majority expressly dismissed this argument, cautioning that Justice Stevens's proposed rule encompassing prosecutorial misconduct generally would lack any standards for its application and would be unmanageable for courts to apply. *Id.* at 675 & n.5 (majority opinion).

torial misconduct cannot invoke the double jeopardy clause to bar the state from retrying him after his conviction is reversed on that ground." *Beringer v. Sheahan*, 934 F.2d 110, 114 (7th Cir. 1991); *cf. United States v. Doyle*, 121 F.3d 1078, 1085 (7th Cir. 1997) (observing that Seventh Circuit case law "impliedly suggests" the court does not subscribe to an expansion of the *Kennedy* exception beyond mistrials).

No circuit court has held that the *Kennedy* exception applies outside of a mistrial, though some have discussed the idea in dicta. The Second Circuit, for example, speculated that the Supreme Court "might think" that the *Kennedy* exception applies in other circumstances. *United States v. Wallach*, 979 F.2d 912, 916 (2d Cir. 1992). The Second Circuit noted that "there is force to [the] argument for some sort of extension" of the *Kennedy* exception under the theory that "the Double Jeopardy Clause protects a defendant from retrial in some other circumstances where prosecutorial misconduct is undertaken with the intention of denying the defendant an opportunity to win an acquittal." *Id.* The court expressed "some doubt" that *Kennedy* itself sanctioned an extension beyond mistrials and acknowledged that any such extension would have to be narrow. *Id.* at 915–16. Regardless, the court did not rely on these musings, but held that the defendant did not meet the *Kennedy* exception because he had presented no evidence of prosecutorial intent. *Id.* 916–17; *see also United States v. Gary*, 74 F.3d 304, 315 (1st Cir. 1996) (approvingly citing *Wallach* but finding "no evidence to buttress a finding of deliberate prosecutorial misconduct"). Every court to have considered extending *Kennedy* has ultimately declined to do so.

We now hold that the *Kennedy* exception does not apply beyond the mistrial context to cases where a post-conviction

17

court grants a new trial on the grounds of prosecutorial misconduct.

## C

Even if a mistrial had been granted in this case, Brown has provided no evidence that the prosecution intended to provoke one. Brown avers that the prosecution's failure to disclose the witnesses' compensation "was motivated by a fear of an acquittal and thus designed to secure a guilty verdict; at worst, the misconduct would bring about a mistrial but only if detected by the defense at trial." Appellant's Br. 64. That is precisely why the *Kennedy* exception does not apply. "Every act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt." *Kennedy*, 456 U.S. at 674. *Kennedy* addresses the situation in which the prosecution fears acquittal and so goads the defendant into requesting a mistrial so that it might present a stronger case on retrial. *See id.* at 678–79; *Curtis*, 683 F.2d at 777. Here, the prosecution's failure to disclose the witnesses' compensation demonstrates only "an overzealous effort to gain a conviction from the first jury and not . . . an attempt to subvert [Brown]'s 'valued right' by bringing the case before a second jury." *Coleman*, 862 F.2d at 458. Indeed, Brown concedes that the prosecution's conduct was intended to protect its key witnesses, without whom, he suggests, the state "did not have a case." Appellant's Br. 64. The prosecution's intent behind the misconduct, according to Brown, was to shore up its case, not have it dismissed.

## IV

Brown argues in the alternative that he is entitled to discovery on the dual-sovereignty issue. He urges us to reverse

the District Court if we find that the record is insufficient to apply the *Bartkus* exception. *See Bartkus*, 359 U.S. at 122–24. But Brown cannot overcome the trial-error rule, so additional discovery would be unavailing. Even assuming, arguendo, that the *Bartkus* exception applies and that Brown could satisfy it, his retrial does not violate the Double Jeopardy Clause. *See Lockhart*, 488 U.S. at 38. Because discovery on the *Bartkus* exception would be fruitless, the District Court did not abuse its discretion in denying the motion to compel. *See Berrigan*, 482 F.2d at 181.

\*     \*     \*

We will affirm the District Court's denial of Brown's motion to dismiss the indictment and its denial of Brown's motion to compel discovery.

19